**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NETFLIX, INC., | Miscellaneous No. 1:25-mc-00230 |
| Movant, | Underlying Litigation: |
| v. | *DivX, LLC v. Netflix, Inc.*, No. 2:19-cv-1602-GW (DFMx) (C.D. Cal.) |
| FORTRESS INVESTMENT GROUP LLC, DIVX CF INVESTORS LLC, | |
| Respondents. | |

**MEMORANDUM OF LAW IN SUPPORT OF NETFLIX, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENAS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ..................................................................................2

    A.    ███████████████████████████████████ .......................................... 2

    B.    Plaintiff DivX's Ongoing Lawsuit Against Netflix In The Central District of California And Netflix's Subpoenas To Fortress In This District .......................... 6

    C.    Fortress's Refusal To Produce Responsive Documents ........................................ 7

III.    LEGAL STANDARD..............................................................................................8

IV.    ARGUMENT ...........................................................................................................9

    A.    Fortress Should Be Compelled To Produce Documents Responsive To Netflix's Subpoenas ........................................................................................................... 9

        1.    Negotiation Documents Resulting in Acquisition of the Asserted Patents. 9

        2.    Documents Regarding Financial Contributions and Distribution of Proceeds ................................................................................................... 14

        3.    Documents Regarding Interest, Management, and Control of Plaintiff DivX................................................................................................... 19

V.    CONCLUSION.....................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
 434 F.3d 1336 (Fed. Cir. 2006)....................................................................11, 15, 19

*Backertop Licensing LLC v. Canary Connect, Inc.*,
 107 F.4th 1335 (Fed. Cir. 2024) ..................................................................12, 16, 17

*Cont'l Cirs. LLC v. Intel Corp.*,
 435 F. Supp. 3d 1014 (D. Ariz. 2020) ................................................................17, 18

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
 331 F.3d 860 (Fed. Cir. 2003)..................................................................................10

*In re MSTG, Inc.*,
 675 F.3d 1337, 1348 (Fed. Cir. 2012)........................................................................9

*In re Novartis & Par Antitrust Litig.*,
 2020 WL 3317203 (S.D.N.Y. June 18, 2020) ......................................................8, 19

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
 298 F.R.D. 184 (S.D.N.Y. 2014) ...............................................................................8

*Kiss Nail Prods., Inc. v. Lashify, Inc.*,
 2024 WL 1466815, at *2 (S.D.N.Y. Apr. 4, 2024)....................................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
 694 F.3d 51 (Fed. Cir. 2012)....................................................................................10

*Propat Int'l Corp. v. Rpost, Inc.*,
 473 F.3d 1187 (Fed. Cir. 2007)..................................................11, 15, 19, 20, 21

*ResQNet.com, Inc. v. Lansa, Inc.*,
 594 F.3d 860 (Fed. Cir. 2010)..................................................................................10

*Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*,
 347 F.R.D. 252 (S.D.N.Y. 2024) ...............................................................................8

S*mall v. Nobel Biocare USA, LLC*,
 808 F. Supp. 2d 584 (S.D.N.Y. 2011)........................................................................9

*Sicom Sys. v. Agilent Techs., Inc.*,
 427 F.3d 971 (Fed. Cir. 2005)............................................................................11, 15

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011).............................................................................10

*Zest IP Holdings, LLC v. Implant Direct Mfg.*,
    2013 WL 5211940 (S.D. Cal. Sept. 13, 2013) .......................................................10

## I.    INTRODUCTION

On August 5, 2024—over nine months ago—Netflix, Inc. ("Netflix") served subpoenas in this District on New York-based Fortress Investment Group LLC ("Fortress Investment Group") and DivX CF Investors LLC ("DivX CF Investors") (collectively, "Fortress").  Among other things, Netflix's subpoena sought discovery from Fortress relevant to the issues of standing, damages, and witness bias—issues that are highly relevant to a pending patent infringement action brought by Fortress's subsidiary DivX, LLC ("Plaintiff DivX") against Netflix in the Central District of California (No. 2:19-cv-1602-GW (DFMx)) (the "Litigation").

Fortress has failed to produce highly-relevant documents responsive to several of Netflix's document requests, despite Netflix's repeated requests that it do so over the past *eight* months. Fortress's failure persists despite Netflix's substantial efforts to narrow the issues in dispute to avoid the need for court intervention—including Netflix participating in *four* meet-and-confers,[1] sending *six* letters,[2] and significantly narrowing the remaining disputes to three discrete categories of responsive and highly-relevant documents.

Fortress's continued noncompliance has significantly prejudiced Netflix's ability to obtain critical discovery.  Specifically, Netflix respectfully requests that the Court compel Fortress to produce the following three categories of documents:

- Documents related to the negotiations culminating in a Purchase Agreement with NeuLion which resulted in Plaintiff DivX's acquisition of the patents asserted in the underlying Litigation, which are responsive to, at least, Netflix's Request No. 7;

- Documents regarding the distribution of proceeds from Plaintiff DivX, including through enforcement of its patents, and DivX CF Investors' and Fortress Investment

---

[1] The Parties met and conferred on August 14, 2024; September 13, 2024; February 20, 2025; and May 8, 2025.

[2] *See* Ex. 20, Dec. 13, 2024 Ltr. from Amadi to Wilson; Ex. 21, Feb. 10, 2025 Ltr. from Amadi to Wilson; Ex. 22, Mar. 11, 2025 Ltr. from Amadi to Wilson; Ex. 23, Apr. 30, 2025 Ltr. from Amadi to Wilson; Ex. 24, May 9, 2025 Ltr. from Amadi to Wilson; Ex. 25, May 14, 2025 Ltr. from Amadi to Wilson.

Group's financial contributions to Plaintiff DivX which are responsive, at least, to Netflix's Request No. 7, 8, 9 10, 11 and 12;

- Documents regarding Fortress's interest, management, and/or control of DivX, DivX CF Investors, and DivX CF Holdings, and ████████████████████████████ ████████████████████████████████████ which are responsive, at least, to Netflix's Request Nos. 7, 8, 10, 11 and 12.

Netflix accordingly respectfully requests that the Court order Fortress to produce the categories set forth above.

## II.    FACTUAL BACKGROUND

████████████████████████████████████████████████
████████████████████████████████████████

Fortress Investment Group is a New York-based publicly traded company that claims to have $49 billion in managed assets.[3]  Ex. 8, Fortress Website.  ████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[3] *See* Fortress Investment Group Home Page, https://www.fortress.com/ (last visited May 13, 2025).



████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *see, e.g.*, Ex. 9,

Peter Briger LinkedIn Profile; Ex. 10, Constantine Dean Dakolias LinkedIn Profile; Ex. 11, Marc

Furstein LinkedIn Profile; Ex. 12, David Prael LinkedIn Profile; Ex. 13, Jennifer Sorkin LinkedIn

Profile; Ex. 14, Megan Johnson LinkedIn Profile; Ex. 15, Jason Meyer LinkedIn Profile; Ex. 16,

Scott Silvers LinkedIn Profile; Ex. 17, Daniel Bass LinkedIn Profile; Ex. 18, David Brooks

LinkedIn Profile.

   Three days after DivX CF Holdings LLC was formed, on December 18, 2017, ████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████ The final purchase price for the assets was $41.5 million. *See* Ex. 29, FIG0001050

at  -1070;  *see*  *also*  NeuLion,  Inc.  Form  10-K  (2018),

https://www.sec.gov/Archives/edgar/data/1387713/000121465918002492/n22318010k.htm (last

visited May 20, 2025) ("On February 12, 2018, NeuLion completed the sale of certain DivX assets,

intellectual property and foreign subsidiaries to an affiliate of Fortress Investment Group for total

cash consideration of $41.5 million."). However, Fortress produced ***no documents*** reflecting the

negotiation of that final purchase price ███████████████████████████████████

or even documents indicating who from Fortress was involved in such negotiations.

   On January 19, 2018, ██████████████████ formed DivX CF Investors LLC. Ex. 6,

Secretary of State Certificate, Bates No. FIG0001152. At the time of its formation, DivX CF

Investors ██████████████████████████████████████████████████████████

███████████████████████████████. Ex. 31, ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

On February 12, 2018, the asserted patents, along with hundreds of other patents and patent applications, were assigned to DivX CF Holdings LLC from NeuLion's subsidiaries. Ex. 34, Patent Assignment (Feb. 12, 2018), Bates No. FIG0000911. That same day, ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████. DivX CF Holdings then changed its name to DivX, LLC—the plaintiff in the underlying Litigation's current company name. Ex. 7, ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████

**B.**   **Plaintiff DivX's Ongoing Lawsuit Against Netflix In The Central District of California And Netflix's Subpoenas To Fortress In This District**

On March 5, 2019, Plaintiff DivX filed a lawsuit against Netflix in the Central District of California. Ex. 1, First Am. Compl., *DivX, LLC v. Netflix, Inc*., Civil Action No. 2:19-cv-1602-GW (DFMx) (C.D. Cal.), Dkt. 60 (Aug. 21, 2019).  In its Rule 7.1 corporate disclosure, Plaintiff DivX identified DivX CF Investors as a party who "may have a pecuniary interest in the outcome of this case."  Ex. 4, Plaintiff's Second Supp. Notice of Interested Parties, *DivX, LLC v. Netflix, Inc*., Civil Action No. 2:19-cv-1602-GW (DFMx) (C.D. Cal.), Dkt. 194 (Sept. 10, 2024).  DivX, furthermore, identified six Fortress-affiliated "investment fund entities" as "indirectly own[ing] 10% of more" of Plaintiff.  *Id.*  Accordingly, there is no dispute that DivX CF Investors has a substantial interest in Plaintiff DivX's litigation against Netflix.

On August 5, 2024, as part of its defense in the underlying California Litigation, Netflix served subpoenas in this District on Fortress Investment Group and DivX CF Investors (together, "Fortress").  Exs. 2-3, Subpoenas.  Among other things, Netflix's subpoenas required Fortress to produce documents regarding (1) the negotiations culminating in the Purchase Agreement with NeuLion resulting in Plaintiff DivX's acquisition of the asserted patents; (2) the distribution of proceeds from Plaintiff DivX, including through enforcement of its patents; (3) DivX CF Investors' and Fortress's financial contributions to Plaintiff DivX; and (4) Fortress's interest, management, and/or control of Plaintiff DivX, DivX CF Investors, and DivX CF Holdings, and any funds affiliated with those entities.  The requested discovery is highly relevant to multiple issues in the California Litigation, including Plaintiff DivX's standing to pursue its patent claims

against Netflix, the value of the asserted patents, and potential witness bias arising from interests in the underlying Litigation.  Moreover, much of the requested discovery is available ***exclusively*** from Fortress Investment Group and DivX CF Investors given that (1) █████████████████

███████████████████████████████████████████████████

███████ ; (2) █████████████████████████████████████████

█████████████████████████████ ; (3) ██████████████████████

███████████████████████████████████████████████████

█████████████████████████ and (4) ████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████ .

### C.    Fortress's Refusal To Produce Responsive Documents

Throughout this litigation, Plaintiff DivX and Fortress—acting in concert—have repeatedly shifted responsibility back and forth in an effort to evade their respective discovery obligations.  Each has claimed that the other bears the burden of producing key categories of documents, in an attempt to ensure that neither produces materials to which Netflix is entitled to defend against Plaintiff DivX's claims.

Fortress made one document production, consisting of sixty-three documents in total, on September 20, 2024, after the parties had met and conferred twice regarding Netflix's subpoenas. After assessing Fortress's production, Netflix sent Fortress a letter regarding the deficiencies in the production.  Ex. 20, Dec. 13, 2024 Ltr. from Amadi to Wilson.  In particular, Fortress failed to produce documents responsive to the majority of the requests in the subpoenas and stated, instead, that they "████████████████████████████" those requests.  Ex. 26, Aug. 27, 2024 Ltr. from Wilson to Amadi.  In the eight months since Fortress's first and only production, the parties have met and conferred on four occasions and Netflix has sent six separate letters regarding

Fortress's responses to the subpoenas in an attempt to resolve the dispute without court intervention. *See supra* p. 1. Despite Netflix's significant efforts to confer with Fortress to narrow the scope of certain requests to attempt to reach agreement—including narrowing the remaining issues to three discrete categories of responsive and highly-relevant documents—Fortress has repeatedly refused to produce responsive documents and failed to make a single supplemental production to address the deficiencies that Netflix identified.

## III.    LEGAL STANDARD

A nonparty has an obligation to produce responsive documents in response to subpoena document requests that "are relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 45(a); Fed. R. Civ. P. 26(b). Relevancy is broadly construed for discovery purposes and is a "relatively low threshold." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014*); Kiss Nail Prods., Inc. v. Lashify, Inc.*, 2024 WL 1466815, at *2 (S.D.N.Y. Apr. 4, 2024) ("Relevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Once the party issuing the subpoena establishes that the materials sought are relevant, the third-party that received the subpoena must produce the materials unless it can demonstrate an undue burden. *In re Novartis & Par Antitrust Litig.*, No. 1:18-cv-04361-AKH, 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020). In assessing whether a subpoena imposes an "undue burden," the court may consider "factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* Claims of undue burden "must explain the manner and extent of the burden, as well as the consequences of compliance." *Id.* The mere assertion that a subpoena is

burdensome is not sufficient basis for a third-party to refuse to produce documents.  *See Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 261 (S.D.N.Y. 2024).

## IV.    ARGUMENT

### A.    Fortress Should Be Compelled To Produce Documents Responsive To Netflix's Subpoenas

Netflix's subpoenas seek documents relevant to key issues in the underlying patent infringement Litigation, including standing, damages, control, and bias.  To date, Fortress has failed to produce key categories of responsive documents, despite multiple meet-and-confers and repeated requests.  The categories discussed below—encompassing the negotiation and acquisition of the asserted patents, financial contributions to and the distribution of proceeds from Plaintiff DivX and its enforcement of the asserted patents, and Fortress's interests in and control over Plaintiff DivX—are not only relevant, but central to Netflix's defenses against Plaintiff DivX's patent infringement claims.  Further, as discussed in detail below, it is not unduly burdensome for Fortress to produce these documents.  Accordingly, Netflix respectfully requests that the Court order Fortress to produce the following categories of documents.

### 1.    *Negotiation Documents Resulting in Acquisition of the Asserted Patents*

Fortress should be compelled to produce documents concerning the negotiations that culminated in the ███████████ with NeuLion, through which Plaintiff DivX acquired the patents asserted in the underlying Litigation.

Documents regarding the negotiations between NeuLion and Fortress to acquire assets, including the asserted patents, for a purchase price of $41.5 million are relevant to, at least, damages.  Courts routinely compel production of such materials.  *See* S*mall v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584, 590 (S.D.N.Y. 2011) ("underlying negotiations are relevant to the calculation of a reasonable royalty using the hypothetical negotiation damages model") (internal

cites omitted); *In re MSTG, Inc*., 675 F.3d 1337, 1348 (Fed. Cir. 2012) (affirming grant of motion to compel because negotiation documents are relevant to damages); *Zest IP Holdings, LLC v. Implant Direct Mfg*., 2013 WL 5211940, *2 (S.D. Cal. Sept. 13, 2013) (granting discovery into "information exchanged" between seller and buyer "prior to [buyer's] acquisition of [seller entity]" as relevant to damages). Such documents bear directly on the valuation of the asserted patents, the perceived strength and scope of the patent rights at the time of acquisition, and the economic expectations of sophisticated parties negotiating the transfer of those rights. *See ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869 (Fed. Cir. 2010) (court must "tie proof of damages to the claimed invention's footprint in the market place"); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003) ("economic relationship between [assignor and assignee] particularly how much is paid for the use of the patent, is a legitimate consideration in determining damages"), *vacated on other grounds*, 545 U.S. 193 (2005); *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 79-80 (Fed. Cir. 2012) (emphasizing the relevance of valuation evidence). For example, negotiation documents may reflect projections of anticipated licensing revenue, contemplated enforcement strategies, or assessments of potential licensees—all of which may be relevant to a reasonable royalty analysis and a jury's understanding of the economic value of the asserted patents. *See Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1311 (Fed. Cir. 2011) (relevant damages evidence includes "internal" documents regarding the relevant technology).

Such documents are especially probative where, as here, the acquirer is a sophisticated patent monetization entity that likely conducted internal assessments of the value of the assets it would be acquiring and engaged in significant negotiations as part of its diligence prior to purchase. As noted above, Fortress produced ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████

These documents are also directly relevant to determining whether Plaintiff DivX has standing to assert its patent claims against Netflix.  Standing in a patent case turns on whether a party possesses "a sufficient ownership interest in" or has received "all substantial rights" in the asserted patents.  *Aspex Eyewear, Inc. v. Miracle Optics, Inc*., 434 F.3d 1336, 1340 (Fed. Cir. 2006); *Propat Int'l Corp. v. Rpost, Inc*., 473 F.3d 1187, 1188 (Fed. Cir. 2007).  The Federal Circuit has emphasized that assessing whether "all substantial rights" were transferred requires a fact-specific inquiry into the parties' intent, making documents surrounding Plaintiff DivX's acquisition of the asserted patents directly relevant.  *Sicom Sys. v. Agilent Techs., Inc*., 427 F.3d 971, 976 (Fed. Cir. 2005) ("Each [] assignment is unique, therefore this court 'must ascertain the intention of the parties and examine the substance of what [the licensing agreement] granted' to determine if it conveys all of the substantial rights in the patent and is sufficient to grant standing.").  Moreover, the right to receive "a substantial share of the proceeds" from patent licensing or enforcement may itself indicate ownership rights.  *Propat Int'l*, 473 F.3d at 1191.  Internal Fortress documents reflecting its intent to receive such proceeds through its role in ████████████████████████████ the transaction are therefore directly relevant to the standing inquiry.

Relatedly, these documents are relevant to determining whether Plaintiff DivX is the real party in interest under Rule 17(a) with standing to assert the patents at issue in the underlying

Litigation.  Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest.").  Fortress's and Plaintiff DivX's own documents indicate that Fortress is likely operating as the driving force behind Plaintiff DivX's patent suit against Netflix, exerting substantial—if not complete—control over Plaintiff DivX.  *See* Ex. 29, ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████; Ex. 38, ████████████████████████████████████████████████ ██████████████████████████████████████████████████████ The nature and posture of ████████████████████████████████████████████████ ███████████████████████████████████ and strongly suggest that Fortress is the real party in interest.  *See Backertop Licensing LLC v. Canary Connect, Inc*., 107 F.4th 1335, 1338 (Fed. Cir. 2024) (acknowledging concern regarding "real parties in interest . . . fraudulently conveying to a shell LLC [the patents] and filing a fictitious patent assignment with the PTO designed to shield those parties from potential liability they would otherwise face in asserting [the patents] in litigation.") (citing *Nimitz Tech. v. CNET Media*, 2022 WL 17338396, at *26 (D. Del. 2022)).  Evidence that Fortress provided the funds to acquire, for Plaintiff DivX, the asserted patents would be directly relevant to this inquiry.  Likewise, evidence that Fortress ██████████ ██████████████████████████████████████████████████████████—particularly if done to enable assertion at the behest of Fortress—goes to the heart of this inquiry and is highly relevant to Netflix's defenses.

Despite the relevance of these documents, and Netflix's repeated requests that Fortress produce them, Fortress has produced ***zero documents*** reflecting how Fortress ████████████ █████████████████████████████████, including valuations of the "patent assets" or communications concerning any such valuations.  Fortress has instead stated—without

explanation—that it does "████████████████████████████████████████."
However, that position is simply not plausible.  Indeed, ██████████████████████
████████████████████████████████████████████████████████████████████████

██████████████████  ██████████████████████████ Moreover, as a sophisticated patent

monetization entity with a self-touted $49 billion in managed assets, it is simply not credible that

Fortress conducted ***no evaluations*** of the patent assets and related rights prior to ████████

████████████████████.  In addition, apart from the ████████████████, Fortress

has produced no other documents predating the ████████████ showing how the transaction

was initiated, who initiated it, or how the negotiations progressed—including with respect to the

$41.5 million purchase price ultimately paid to NeuLion.  *See* Ex. 29, FIG0001050 at -1070.  For

example, Fortress has failed to produce any documents sufficient to even identify the individuals

who negotiated the Purchase Agreement, let alone documents reflecting the actual negotiation of

that agreement, even though ████████████████████████████████████████████

████████████.

    Fortress's assertion that production is not required because "████████████████

████████████████" is similarly misplaced.  While the ESI Protocol in the underlying

Litigation, *DivX, LLC v. Netflix, Inc.*, Civil Action No. 2:19-cv-1602-GW (DFMx) (C.D. Cal.),

Dkt. 103, generally excludes email from the scope of initial discovery, it expressly permits email

discovery when a party "makes a good faith determination that email discovery is reasonably likely

to result in production of noncumulative discovery that is relevant to any party's claim or defense

and proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b)(1)."  That standard is

readily met here.  The requested discovery concerns a discrete and significant transaction—the

$41.5 million acquisition of the NeuLion assets containing the asserted patents—preceded by

negotiations that presumably occurred over a confined time period. *See* Ex. 27, ███████████ ██████████████████████; Ex. 29, ████████████████████████████ Bates No. FIG0001050. Moreover, as discussed above, Fortress has not produced a ***single document*** indicating when and how those negotiations began, nor has it identified any burden associated with collecting documents related to those negotiations. For instance, Fortress has not named a single individual involved in the negotiations, much less shown that identifying and searching the files of those individuals would be unduly burdensome. *See* Ex. 19, May 12, 2025 Ltr. from Wilson to Amadi. Indeed, ████████████████████████████████████████, which only underscores the necessity of email discovery. And in any event, Fortress is not a disinterested third party—████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████. Under these circumstances, targeted email discovery is both necessary and proportionate.[5]

### 2. Documents Regarding Financial Contributions and Distribution of Proceeds

Fortress should be compelled to produce documents concerning DivX CF Investors' and Fortress Investment Group's (and its associated funds) financial contributions to Plaintiff DivX and the distribution of proceeds from Plaintiff DivX, including distributions arising from the enforcement of Plaintiff DivX's patents.

Documents concerning both the financial contributions and the distribution of proceeds are directly relevant to determining whether Plaintiff DivX has standing to assert its patent claims

---

[5] In a May 12, 2025 letter, Fortress claimed—for the first time—that it "████████████████████ ████████████████████." Ex. 19, May 12, 2025 Ltr. from Wilson to Amadi (emphasis added). However, Fortress has not represented that it conducted any investigation that would provide a good faith basis for that assertion. And, in any event, as discussed above, Fortress's position that there are ***no documents***—email or otherwise—reflecting its negotiation if a $41.5 million transaction is both contrary to the single document (the September 2017 proposal) Fortress has produced and not reasonable given the facts of this case.

against Netflix.  As noted above, standing in a patent case turns on whether a party possesses "a sufficient ownership interest in" or has received "all substantial rights" in the asserted patents. *Aspex Eyewear*, 434 F.3d at 1340; *Propat Int'l*, 473 F.3d at 1188.  Given the fact-specific nature of that inquiry, documents surrounding financial contributions to Plaintiff DivX and its distribution of proceeds from assertion of the asserted patents are directly relevant.  *Sicom Sys.*, 427 F.3d at 976 ("Each [] assignment is unique, therefore this court 'must ascertain the intention of the parties and examine the substance of what [the licensing agreement] granted' to determine if it conveys all of the substantial rights in the patent and is sufficient to grant standing.").

As the Federal Circuit has acknowledged, the right to receive "a substantial share of the proceeds" from patent licensing or enforcement may itself indicate ownership rights.  *Propat Int'l*, 473 F.3d at 1191.  Here, ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████

      As with the negotiation documents discussed above, these materials are further relevant to

standing because they speak to whether DivX is the real party in interest. *See* Fed. R. Civ. P. 17(a).

As the Court explained in *Backertop Licensing*, "conveying to a shell LLC the patents and filing a

fictitious patent assignment with the PTO to shield those [real] parties [in interest] from potential

liability they would otherwise face in asserting the patents in litigation" is considered "a fraud on the court." 107 F.4th at 1338. This is exactly what Fortress is doing here. ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████

Moreover, documents concerning both the distribution of proceeds from assertion or licensing of the asserted patents and Fortress's financial contributions to Plaintiff DivX are directly relevant to witness bias. These materials may reveal individuals or entities with a financial interest in the outcome of the underlying Litigation—demonstrating a motive to influence or shape testimony in a self-serving manner. *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) ("to the extent persons affiliated with Plaintiff may receive substantial compensation through the litigation, that fact bears on their credibility"). Key witnesses in this case are affiliated with Fortress, further underscoring the need to examine their potential bias and the extent of Fortress's influence over Plaintiff DivX. Constantine Dakolias, who served as President of both Plaintiff DivX and DivX CF Investors is also Co-Chief Investment Officer & Managing Partner of Fortress Credit Funds. *See* Ex. 34, Patent Assignment (Feb. 12, 2018), FIG0000911; Ex. 36, ██████████████████████████████████████; Ex. 31, FIG000211 at -219; https://www.fortress.com/about/leadership/bios/constantine-dakolias. Marc Furstein, ████████████████████████████████████████████ █████████████████████████████████████████████████, is also the President of Fortress Investment Group. Ex. 31, FIG000211 at -216; Ex. 28, FIG0001128 at -133;

https://www.fortress.com/who-we-are/team/marc-furstein.    Multiple other witnesses, including

Noel Egnatios, Eric Grab, Francis Chan, and Rich Nagle, ██████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████.    Ex. 38, FIG000456 at -527; Ex. 39, FIG0000081 at -81 ("████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████") (emphasis added).    Indeed, Eric

Grab is an inventor on one of Plaintiff's DivX's asserted patents in the underlying Litigation.  *See*

U.S. Patent No. 7,295,673.   The fact that these witnesses "may receive substantial compensation

through the litigation" "bears on their credibility."  *Cont'l Cirs.*, 435 F. Supp. 3d at 1019.

    Finally, these documents bear on the issue of damages.  *See, e.g.*, *id.* (granting motion to

compel "funding agreements . . . likely contain financial information related to the value of the

litigation").   Plaintiff DivX claims that it suffers damages from alleged "patent infringement"

activities, while, in reality, it is just using the patents to generate large sums of money ████████

█████████████████████████████████████.    *See, id.* at 1014 (granting motion to compel

because "identity of people or entities with fiscal interest in outcome of litigation were relevant").

    Despite the relevance of these documents, Fortress has failed to produce them, claiming

that Netflix's requests are ██████████████████," that there is no "████████████████████

████████████████████████████," and that "███████████████████████████████████

███████████████████."  Ex. 19, May 12, 2025 Ltr. From Wilson to Amadi.  That is plainly

incorrect.  As discussed above, documents concerning contributions to and distribution of patent

enforcement proceeds are highly relevant, and courts have granted motions to compel regarding

such documents.  Further, while claiming the document request is "unduly burdensome," Fortress

has not provided any explanation of "the manner and extent of the burden" or "the consequences of compliance." *In re Novartis & Par Antitrust Litig.*, 2020 WL 3317203, at *5. █████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Thus, Fortress should be compelled to produce responsive documents reflecting contributions made to and the distribution of funds from Plaintiff DivX to DivX CF Investors, Fortress, and the Fortress-affiliated funds.

### 3.    *Documents Regarding Interest, Management, and Control of Plaintiff DivX*

Fortress should be compelled to produce documents concerning Fortress's interest, management, and/or control of Plaintiff DivX, DivX CF Investors, and any funds affiliated with those entities, including ████████████████████████████████████████████

█████████████████████████████████████████████████.

Documents concerning Fortress's interest in, management of, or control over Plaintiff DivX are directly relevant to the standing inquiry, which includes determining whether DivX is the real party in interest. As discussed *supra* Subsections IV.A.1. and IV.A.2., █████████

████████████████████████████████████████████████████

████████████████████████████████████████████████, which bears directly on whether Plaintiff DivX possesses a "sufficient ownership interest in" or has received "all substantial rights" in the asserted patents. *Propat Int'l*, 473 F.3d at 1188; *Aspex Eyewear*, 434

F.3d at 1340.  Moreover, as explained *supra* p. 3-5, ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ are, likewise, relevant to

whether DivX possesses a "sufficient ownership interest in" or has received "all substantial rights"

in the asserted patents.  *Id.* ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████  The

requested documents are necessary to assess the extent of DivX CF Investors' and Fortress's

control over the asserted patents, including whether they hold rights to veto patent transfers or to

select targets for licensing and enforcement.  As the Federal Circuit noted in *Propat Int'l*, such

rights are indicative of "substantial ongoing control of" the patents, which bears directly on

whether all substantial rights were transferred to DivX.  473 F.3d at 1191.

Documents concerning the management and control of Plaintiff DivX are also directly

relevant to the credibility of witnesses affiliated with the plaintiff. To the extent individuals

presented as neutral corporate representatives or decision-makers are, in fact, subject to the direction or influence of Fortress Investment Group or its affiliates, their testimony may be biased or incomplete. Indeed, the evidence shows that DivX's ███████████████████████████ ██████████████. *See* Ex. 28, ███████████████████████████████████████ ██████████████████; *supra* p. 4. As mentioned above *supra* Subsection IV.A.2., multiple key witnesses in this case, including DivX's former president Mr. Dakolias, are executives at Fortress. Understanding the true chain of authority and control within DivX—including who exercises meaningful oversight or makes strategic decisions—is essential for assessing whether witnesses are offering independent and reliable accounts or simply advancing Fortress's litigation interests. Such information bears directly on the weight and credibility the jury should afford their testimony.

Nonetheless, Fortress has refused to produce critical responsive documents—including documents reflecting the responsibilities and authority of ██████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████. Fortress's attempts to withhold these documents, despite their direct relevance, only confirms that Fortress is orchestrating the underlying Litigation from behind the scenes while seeking to obscure that reality.

Documents concerning Fortress's interest in, management of, or control over Plaintiff DivX, DivX CF Investors, and ███████████████████ are uniquely in Fortress's possession. These documents originate from Fortress itself or ███████████████████████. Additionally, Fortress has provided no justification for claiming that Netflix's request is unduly burdensome; it is not, as Netflix has requested a specific and discrete category of documents. Accordingly, Fortress should be compelled to produce documents reflecting its interest in, management of, or control over Plaintiff DivX, DivX CF Investors, and ████████████████████████████.

## V.    CONCLUSION

Netflix respectfully requests that the Court grant Netflix's Motion, and order Fortress to produce (1) documents related to the negotiations culminating in the ███████████ regarding the asserted patents from NeuLion; (2) documents regarding financial contributions to and distribution of proceeds from Plaintiff DivX, including through enforcement of its patents; and (3) documents regarding Fortress's interest, management, and/or control of DivX, DivX CF Investors, and DivX CF Holdings, and ███████████████████████████ ██████████████████████████████████████████████ ████████████████████████.

DATED: May 20, 2025                      Respectfully submitted,

By: */s/ Jeffrey A. Dennhardt*
Jeffrey A. Dennhardt (#5343660)
Jeffrey.Dennhardt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Brittany B. Amadi (*pro hac vice* to be filed)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
brittany.amadi@wilmerhale.com

*Attorneys for Movant Netflix, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Netflix, Inc., certifies that this brief contains 6,838 words, which complies with the word limit of Local Rule 7.1(c).

DATED:  May 20, 2025

By: _/s/ Jeffrey A. Dennhardt_
Jeffrey A. Dennhardt (5343660)
Jeffrey.Dennhardt@wilmerhale.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2025, a copy of the foregoing document—Memorandum of Law in Support of Netflix, Inc.'s Motion to Compel Production of Documents Pursuant to Subpoena—was served on counsel for Fortress Investment Group LLC and DivX CF Investors LLC, via email:

J. Mark Wilson, markwilson@mvalaw.com

Kate Cole, <u>katecole@mvalaw.com</u>

Kaity Emerson, kaityemerson@mvalaw.com

By: */s/ Hannah Santasawatkul*
Hannah Santasawatkul